UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

HESCO PARTS, LLC                                                                                    PLAINTIFF

v.                                                                         CIVIL ACTION NO. 3:02CV-736-S

FORD MOTOR COMPANY, et al.                                                                 DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This matter is before the court on motion of the defendants, Ford Motor Company and Visteon Corporation, for summary judgment as to the Thirteenth Count of the Second Amended and Supplemental Complaint in this action. The Thirteenth Count alleges restraint of trade by Ford and Visteon in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1. Specifically, the Thirteenth Count alleges that the "Defendants have contracted, combined and conspired to participate in a *per se* unlawful contract in restraint of interstate trade and commerce..." 2d Am. Compl., ¶ 216.

### I. Legal Framework

A party moving for summary judgment has the burden of showing that there are no genuine issues of fact and that the movant is entitled to summary judgment as a matter of law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 151-60, 90 S. Ct. 1598, 16 L. Ed. 2d 142 (1970); *Felix v. Young*, 536 F.2d 1126, 1134 (6th Cir. 1976). Not every factual dispute between the parties will prevent summary judgment. The disputed facts must be material. They must be facts which, under the substantive law governing the issue, might affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 106 S. Ct. 2505, 2510 (1986). The dispute must also be genuine. The facts must be such that if they were proven at trial, a reasonable jury could return a verdict for the non-moving party. *Id.* at 2510. The disputed issue does not have to be resolved conclusively in favor of the non-moving party, but that party is required to present some significant probative evidence which makes

it necessary to resolve the parties' differing versions of the dispute at trial. *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 288-89 (1968). The evidence must be construed in a light most favorable to the party opposing the motion. *Bohn Aluminum & Brass Corp. v. Storm King Corp.*, 303 F.2d 425 (6th Cir. 1962).

Initially, we note that the parties dispute which facts are pertinent to the issue before the court. Indeed, Hesco contends that it needs additional discovery to amass additional facts to controvert the motion and establish that it has stated a viable claim for *per se* violation of the Sherman Act. The court concludes that Hesco seeks discovery that would not assist it in further addressing the limited area of inquiry on this motion. The request for Fed.R.Civ.P. 56(f) abeyance and additional discovery will be denied, and the matter will be addressed on the extensive and detailed submissions already of record.

The legal framework for analysis of the Thirteenth Count establishes the parameters of our factual inquiry. Section 1 of the Sherman Act provides that "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal." 15 U.S.C. § 1. The United States Supreme Court has stated that this provision of the Sherman Act was intended to prohibit only unreasonable restraints of trade. *Business Electronics Corporation v. Sharp Electronics Corporation*, 485 U.S. 717, 723, 108 S.Ct. 1515, 1519, 99 L.Ed.2d 808 (1988), *citing, National Collegiate Athletic Association v. Board of Regents of University of Oklahoma*, 468 U.S. 85, 98, 104 S.Ct. 2948, 2958-59, 82 L.Ed.2d 70 (1984); *Standard Oil Co. v. United States*, 221 U.S. 1, 60, 31 S.Ct. 502, 515-16, 55 L.Ed. 619 (1911). As such, the usual test for whether challenged activity is violative of § 1 is a case-by-case application of the "rule of reason," whereby "the factfinder weighs all of the circumstances of the case in deciding whether a restrictive practice should be prohibited as imposing an unreasonable restraint on competition." *Business Electronics*, 108 S.Ct. at 1519, *quoting, Continental T.V. v. GTE Sylvania, Inc.*, 433 U.S. 36, 49, 97 S.Ct. 2549, 2557, 53 L.Ed.2d 568

(1977). A finding of a *per se* violation, that is, conduct found to be manifestly anticompetitive, and thus illegal, without a case-by-case evaluation, is the exception rather than the rule. The Supreme Court has stated that

> Our approach to the question presented in the present case [the proper dividing line between the rule that vertical price restraints are illegal *per se* and the rule that vertical nonprice restraints are to be judged under the rule of reason] is guided by the premises of *GTE Sylvania* [*supra*.] and *Monsanto* [*Co. v. Spray-Rite Service Corp.*, 465 U.S. 752, 104 S.Ct. 1464, 79 L.Ed.2d 775 (1984)]: that there is a presumption in favor of a rule-of-reason standard; that departure from that standard must be justified by demonstrable economic effect, such as the facilitation of cartelizing, rather than formalistic distinctions; that interbrand competition is the primary concern of the antitrust laws; and that rules in this area should be formulated with a view towards protecting the doctrine of *GTE Sylvania*.

*Business Electronics*, 108 S.Ct. at 1520-21.

In *Business Electronics, supra.*, the Supreme Court affirmed the Fifth Circuit decision that "to render illegal *per se* a vertical agreement between a manufacturer and a dealer to terminate a second dealer, the first dealer "must expressly or impliedly agree to set its prices at some level, though not a specific one." *Business Electronics*, 108 S.Ct. at 1518. In affirming, the Supreme Court concluded that "economic analysis supports the view, and no precedent opposes it, that a vertical restraint is not illegal *per se* unless it includes some agreement on price or price levels." *Business Electronics*, 108 S.Ct. at 1525. There is no allegation in the Thirteenth Count that there was any agreement between dealers to set prices. Rather, the allegation is that there was an agreement between Ford and Visteon to prohibit Visteon and Visteon distributors from selling Visteon brand parts to Ford dealerships. 2d Am. Compl., ¶ 217.[1] Based upon the clear holding in

---

[1] To the extent that Hesco seeks additional discovery in the hopes of uncovering evidence implicating other automobile manufacturers in an as-yet undiscovered cartel activity, the facts alleged in ¶¶ 11-116 and the Thirteenth Count are completely devoid of any such allegations. This court is constrained by the scope of the allegations made in the Thirteenth Count. . As noted in *ECC v. Toshiba America Consumer Products, Inc.*, 129 F.3d 240, 243 (2d Cir. 1997), "While '*Conley* permits a pleader to enjoy all favorable inference from facts that have been pleaded, [it] does not permit conclusory statements to substitute for minimally sufficient factual allegations.' *Furlong, M.D. v. Long Island College Hosp.*, 710 F.2d 922, 928 (2d Cir. 1983). As the Supreme Court has stated, '[i]t is not...proper to assume that the [plaintiff] can prove facts that it has not alleged or that the defendants have violated the antitrust laws in ways that have not been alleged.' *Associated General Contractors, Inc. v. California State Council of Carpenters*,
(continued...)

*Business Electronics, supra.*, *if* this alleged conspiracy is a vertical agreement, it cannot be proven to be *per se* illegal activity and the Thirteenth Count must be dismissed. If, however, the alleged conspiracy is a horizontal agreement, it is *per se* illegal. Thus our inquiry now narrows to what facts must be of record and undisputed for this court to make a summary determination concerning the nature of the relationship at issue.

Hesco contends that this determination is a factual rather than legal matter, and is not amenable to summary disposition. The cases cited by Hesco in support of this proposition, however, are inapposite. It is clear that in antitrust cases as well as in cases involving other areas of law, when no genuine issue of material fact exists as to the facts which undergird a legal determination that a claim is not viable, summary judgment is appropriate. *Matsushita, supra.; Anderson, supra.; Monsanto, Co., supra.; Eastman Kodak v. Image Technical Services*, 504 U.S. 451, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992).

Hesco contends that issues of fact exist concerning the market impact of the alleged illegal activity which preclude summary judgment. Hesco thus urges that the court adopt an "economic realities" approach to the evidence rather than what it deems as a characterization "on the basis of structural formalisms" posited by the defendants. Response Brief, p. 41.

In *Business Electronics, supra.,* the Court held that to render illegal *per se* a vertical agreement between a manufacturer and a dealer to terminate a second dealer, there must be some agreement on price or price levels. In that case, the first dealer coerced the termination of the second dealer by issuing an ultimatum that it [the first dealer] would end its relationship with the manufacturer unless the second dealer's dealership was terminated within thirty days. *Business*

---

[1](...continued)
459 U.S. 519, 526, 103 S.Ct. 897, 902, 74 L.Ed.2d 723 (1983)." We find, therefore, that there is no legitimate dispute of fact underlying the Thirteenth Count with respect to the manner in which the alleged restraint was implemented. The Thirteenth Count alleges a restraint agreed upon between a single dealer and a single manufacturer to prohibit Visteon and Hesco from selling Visteon brand parts to Ford dealerships.

*Electronics,* 108 S.Ct. at 1518.  Despite the anticompetitive gloss added by these facts, the court found that "the line drawn by the 5th Circuit" with regard to vertical nonprice restraints was "an appropriate one," noting that "a rule of *per se* illegality...was not needed or effective to protect *intrabrand* competition."  108 S.Ct. at 1520 (emphasis in original).

We have before us a purported agreement, entered into at the behest of a dealer, between this single dealer and single manufacturer, restricting the manufacturer's sale of its product, either itself or through another distributor, in a particular segment of the market.  As in *Business Electronics*, the other distributor arrangement was terminated, and the rebuffed distributor filed suit alleging *per se* illegality.  There is no question that Visteon manufactures the Ford parts and Ford buys them from Visteon for resale.  There is no allegation of an agreement on price or price levels in the complaint.  We find nothing to distinguish these two cases.[2,3]  Therefore, the rule laid down by *Business Electronics*, and reiterated in *Crane & Shovel Sales Corp. v. Bucyrus-Erie Co.*, 854 F.2d 802, 806 (6th Cir. 1988) and other Sixth Circuit cases, "...the Supreme Court held that vertical distribution restraints are to be tested under the rule of reason, and would no longer be barred under a *per se* rule. We decline, therefore, to consider evidence as pertinent to the *per se* inquiry if it strays beyond the bounds of the *Business Electronics* parameters.  Our sole inquiry is whether the alleged restraint of trade is to be classified as a vertical or horizontal restraint.[4]

---

[2]Hesco urges that the purported arrangement between Ford and Visteon is not a dual distribution arrangement because Visteon manufactures parts under more than one brand name, the alleged restraint was not imposed unilaterally by Visteon, and it was not imposed to enhance rather than inhibit competitive marketing of its brand of product.  The court does not find Hesco's analysis persuasive, for the reasons set forth later in this opinion.

[3]The initial disposition in *Business Electronics* was on a jury verdict, while we are evaluating this claim on summary judgment.  We do not find the difference in procedural posture to be relevant inasmuch as the pertinent facts, facts made pertinent by the *Supreme Court* decision, are undisputed in this case.

[4]Some courts have expressed concern over the use of the characterization of restraints as either "horizontal" or "vertical," indicating that antitrust law is addressed to the economic impact of any given arrangement.  This court does not take issue with that view.  However, addressing the matter of *per se* violations, the Supreme Court has made it abundantly clear that it is the nature of the relationship between the parties to the alleged restraint that determines whether the alleged restraint can be found to be *per se*
(continued...)

II.  Undisputed Facts

Hesco is a Kentucky corporation with its principal place of business in Louisville. Ford and Visteon are Delaware corporations with their principal places of business in Dearborn, Michigan.

Before 2000, Visteon was wholly owned by Ford. It was an internal supplier of parts for the production and servicing of Ford cars and trucks. Ford spun off Visteon in early 2000 as a separate and independent corporate entity. Visteon continued to supply parts for the production and servicing of Ford cars and trucks after the spin-off. Visteon remains a substantial supplier of parts to Ford. Ford does not manufacture any of the replacement parts that it purchases from Visteon.

Ford buys replacement parts from Visteon and resells them primarily to Ford dealerships for use in their service operations or for resale to their customers. Visteon also makes replacement parts for Ford cars and trucks that it sells to distributors such as Hesco for resale. Visteon also sells some Ford replacement parts directly to its own customers.

Beginning in 1998, Hesco remanufactured certain parts, specifically starters and alternators for Visteon. In the fall of 2001, Visteon approached Hesco with a proposal that it become a distributor of climate control and heat transfer parts that were manufactured by Visteon's Climate Control Division and were sold under a Visteon brand name. Hesco agreed to purchase $2.2 million in Visteon-brand climate control and heat transfer parts. Visteon knew that Hesco's customer base for resale of these and other items included Ford dealerships.

In 2002, Ford pressured Visteon to discontinue its distributor relationship with Hesco. Ford and Hesco entered into an agreement which resulted in the termination of the Visteon-Hesco relationship July, 2003.

---

[4](...continued)
*illegal:* "[A] facially vertical restraint imposed by a manufacturer only because it has been coerced by a 'horizontal cartel' agreement among his distributors is in reality a horizontal restraint...That says precisely what we say: a restraint is horizontal not because it has horizontal effects, but because it is the product of a horizontal agreement." *Business Electronics*, 108 S.Ct. at 1523, n. 4.

Hesco's Fed.R.Civ.P. 56(f) affidavit states that it believes that it has sufficiently controverted the motion of the defendants (Edwards Aff., ¶ 3). However, it states that the court cannot grant summary judgment until it has had a chance to garner further evidence. It seeks evidence as to who was involved in the conspiracy to restrain trade in the replacement parts aftermarket. (Edwards Aff., pp. 4-6). The information Hesco seeks has absolutely no bearing on the issue at bar. The alleged restraint herein refers only to Visteon and Ford's agreements as to Hesco and the Ford Dealerships. Hesco's attempt to obtain discovery from an Illinois lawsuit concerning a parts locator computer program in an effort to ascertain whether these two alleged schemes may in some way intersect and connect other automobile manufacturers in a broader illegal plan reaches far beyond the allegations of the complaint and into the realm of speculation. Such a proposed fishing expedition cannot be used to forestall the inquiry here.

Hesco seeks further discovery which will allegedly relate to the determination whether Ford and Visteon are horizontal competitors and whether Ford was the driving force behind the agreements in issue. There does not appear to be any dispute, however, concerning what Visteon's various roles in the replacement parts aftermarket are. Additionally, Ford and Visteon concede, for purposes of this motion, that Ford pressured Visteon to comply with its requests concerning sales to Ford dealerships.

Finally, Hesco seeks to explore whether there is any asserted procompetitive justification of the agreements in question. The defendants have articulated some measure of justification. However, this is not relevant to an inquiry concerning an alleged *per se* violation. The Supreme Court in *Business Electronics, supra.*, took considerations of redeeming competitive value out of the equation. *See also, Care Heating & Cooling, Inc. v. American Standard, Inc.*, 427 F.3d 1008, 1013 (6th Cir. 2005).

The request for further discovery pursuant to Fed.R.Civ.P. 56(f) prior to decision on the motion is **DENIED**.

### III. Characterization of the Visteon-Ford Relationship

Visteon is the manufacturer of replacement parts for Ford-brand vehicles. These parts are sold to Ford and marketed under the Ford name. Visteon also manufactures and markets replacement parts for Ford-brand vehicles under a Visteon brand name. Visteon sells some parts directly to customers and sells some to distributors such as Hesco. To the extent that Visteon or Visteon distributors sold replacement parts to Ford dealerships, Visteon and Ford were in direct competition for the sale of those parts. Hesco would have the court find that this places Visteon and Ford in a horizontal arrangement to restrain trade. However, the inquiry must go further than the mere fact that Visteon also sells some replacement parts for Ford-brand vehicles.

Visteon is the manufacturer of all of the parts in issue. These parts simply carry different brand names depending upon who is selling the part. We find the facts in this case to be on point with those in *Electronics Communications Corp. v. Toshiba America Consumer Products, Inc.*, 129 F.3d 240 (2d Cir. 1997). In *Toshiba*, Electronics Communications Corp. ("ECC") complained that it was subject to an illegal restraint when it was terminated as a distributor of Toshiba-brand cellular telephones. ECC alleged that Toshiba and ECC entered into an agreement whereby ECC became a distributor of Toshiba-brand cell phones in the United States. Prior to this agreement, these cell phones were manufactured in Japan by Toshiba's parent company and sold in the United States exclusively by Audiovox under the Audiovox name. ECC alleged that when Audiovox learned of Toshiba's plan to distribute its phones under the Toshiba brand name through other distribution channels, Audiovox threatened to use economic and political pressure to stop it. ECC alleged that Toshiba terminated its relationship with it as a result of Audiovox's actions. Based upon Audiovox's alleged power, ECC claimed that the agreement harmed competition and constituted an illegal restraint on trade.

First and foremost, the *Toshiba* court analyzed the claim under the rule of reason standard, rejecting the characterization offered by ECC that because phones were being sold under two brand names by Toshiba and Audiovox, that the companies were competing manufacturers. The court stated that "Mere labels do not alter the essential nature of the economic relationship...The allegations of the complaint establish that the relationship was essentially the same as the dual distribution arrangements that have repeatedly been analyzed as vertical, not horizontal." *Toshiba*, 129 F.3d at 244, n. 1. In analysis, the court stated:

> To state a claim under section 1, it is not enough merely to allege that, as a result of the agreement between Toshiba and Audiovox, Toshiba-brand cellular phones no longer compete against Audiovox-brand cellular phones. The fact remains that the dispute involves one manufacturer's product, Toshiba cellular phones. Although two brand names are involved, this is essentially a dispute about the way one product is distributed, a question of intrabrand competition. We considered a similar antitrust challenge in *Oreck[Corp. v. Whirlpool Corp.*, 579 F.2d 126 (2d Cir. 1978)]. There, a manufacturer terminated a dealer that sold vacuum cleaners under the manufacturer's label, granting Sears exclusive rights to distribute the manufacturer's vacuum cleaners under a different label. *See*, 579 F.2d at 128. Despite the fact that the case involved two competing brands of vacuum cleaners, because one manufacturer's product was involved we held that the agreement was not per se illegal and the rule of reason analysis applied..."

*Toshiba*, 129 F.3d at 244. We note that the court in *Toshiba* did not find that the fact that the inducement to eliminate the second distributor came by way of ultimatum from the first distributor had any bearing on the analysis. *See, also, General Aviation, Inc. v. Garrett Corporation*, 743 F.Supp. 515 (W.D. Mich 1990); *Business Electronics, supra.*[5] We find the additional authority cited by Hesco concerning the issue of dual distribution to be inapposite. *See, also, International Logistics Group, Ltd. v. Chrysler Corporation*, 884 F.2d 904 (6th Cir. 1989)("Situations involving dual distribution have sometimes erroneously been characterized as horizontal, and subjected to a per se analysis, because the supplier also acts as dealer. However, the fact that a supplier also

---

[5]We follow the line of reasoning in *Oreck* only insofar as it is discussed in *Toshiba* on the issue of dual branding of the product of one manufacturer. *Oreck*, is a pre-*Business Electronics* decision.

engages in distribution does not make a restraint "horizontal." Accordingly, vertical restraints involving dual distribution will be analyzed in the same manner as other vertical restraints.").

The court concludes that the Thirteenth Count and the pertinent undisputed facts upon which it is based alleges a vertical nonprice restraint which cannot form the basis of a *per se* violation of § 1 of the Sherman Act. For this reason, **IT IS HEREBY ORDERED AND ADJUDGED** that the motion of the defendants, Ford Motor Company and Visteon Corporation, for summary judgment as to the Thirteenth Count of the Second Amended and Supplemental Complaint (DN 113) is **GRANTED** and the Thirteenth Count is **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED.**